UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANISHA RENEA CARTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 2629 |
| v. | ) |
| | ) Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[2]

The claimant, Janisha Renea Carter, began receiving disability benefits for a chronic pulmonary condition and asthma in April 1995, when she was about fourteen months old (R. 165). Under the Social Security Act, children who receive disability benefits must have their eligibility for benefits redetermined by the Commissioner of Social Security within one year after their eighteenth birthday, "applying the criteria used in determining initial eligibility for individuals who are age 18 or older." 42 U.S.C. § 1382c(a)(3)(H)(iii). On November 1, 2012, the Commissioner informed Ms. Carter that her benefits would stop on January 31, 2013 (one year after she turned 18 years old), because she was not disabled under the definition of disability for adults (R. 161). After a hearing before a Social Security disability officer, the denial of benefits was affirmed in a written decision (R. 186-95).

Ms. Carter then sought and received a hearing before an administrative law judge ("ALJ"), who denied her claim in a written opinion (R. 13). The Appeals Council denied Ms. Carter's

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2]On June 20, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 13).

request for review of the ALJ decision, making it the final decision of the Commissioner (R. 1-4). Ms. Carter now seeks reversal and remand of the Commissioner's decision ending her Social Security benefits (doc. # 21: Pl.'s Mot. for Summ. J.). The Commissioner has filed a cross-motion asking the Court to affirm its decision (doc. # 28: Def.'s Mot. for Summ. J.). For the reasons that follow, we deny Ms. Carter's motion and affirm the Commissioner's decision.

I.

In 2008, Ms. Carter suffered an asthma attack so severe she had to be intubated and put on a ventilator (R. 603). As she neared her eighteenth birthday on January 30, 2012, however, Ms. Carter's pediatric pulmonologist, Javeed Akhter, M.D., noted that although her pulmonary function remained below normal and she continued to have symptoms, she was showing significant improvement with a medication regimen that included Advair, Singulair, Prednisone, Albuterol (ProAir), and Xolair injections (*see* R. 603, 371).[3] Indeed, although Ms. Carter visited the emergency room ("ER") several times in 2012 for symptoms related to asthma, pulmonary function testing showed only a mild to moderate degree of obstruction (R. 634, 637, 643, 659, 666, 670), and Dr. Akhter opined that Ms. Carter's asthma, though severe, was "well controlled" (R. 581). On October 11, 2012, a state agency consultant opined that Ms. Carter's asthma was "reasonably well-controlled," and there was no evidence of limitations except to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants (R. 615-18).

---

[3]These asthma medications work as follows. Advair is an inhaled asthma medication that contains both a corticosteroid and a bronchodilator. Singulair blocks the effects of leukotrienes, immune system chemicals that cause asthma symptoms, for up to 24 hours. Prednisone is an oral corticosteroid used to treat severe asthma attacks. Albuterol is a "quick-relief" or "rescue" medication, which begins working within minutes and is effective for four to six hours; it is not for daily use. Xolair is used to treat asthma triggered by airborne allergens; it is given by injection every two to four weeks. https://www.mayoclinic.org/diseases-conditions/asthma/in-depth/asthma-medications/art-20045557.

The following year, Ms. Carter began taking classes at Prairie State College. On February 6, 2013, she wrote on her disability services form for school that her asthma caused "shortness of breath but nothing major;" nevertheless, she sought certain sleeping accommodations and extra time to get to class (R. 1068). On April 24, 2013, Ms. Carter went to the ER for wheezing and shortness of breath after using marijuana the previous day (R. 702). On July 19, 2013, she again visited the ER for shortness of breath and chest tightening (R. 711). Ms. Carter was treated and diagnosed with "mild" asthma exacerbation and acute bronchitis (R. 716). On August 26, 2013, Ms. Carter's primary care physician, Kevin Gordon, D.O., observed slight wheezing (R. 1143).

On October 1, 2013, Ms. Carter began treatment with adult pulmonologist Ravi Sundaram, D.O. (R. 771). Dr. Sundaram performed a spirometry test, which measures the largest amount of air one can forcefully exhale after breathing in deeply (forced vital capacity or "FVC") and how much air can be forced from one's lungs in one second (forced expiratory volume or "FEV1"); lower FEV1 readings indicate more significant obstruction.[4] Dr. Sundaram found Ms. Carter had "severe obstructive ventilatory defect, moderate bordering severe with FEV1 of 1.65 [liters]" (R. 772). Dr. Sundaram prescribed Advair, Singulair, Prednisone, ProAir and Nasonex, and opined Ms. Carter may need to restart Xolair injections (R. 773-74).

On October 20, 2013, Ms. Carter was admitted to the ER for two days with chest pain, coughing, wheezing and acute asthma exacerbation (R. 727). She reported that her symptoms worsened when she visited a friend with dogs, and Ms. Carter's mother reported that she had not been using Advair regularly or taking Singulair (*Id.*). The treatment provider wrote that the exacerbation was likely triggered by an allergic reaction to dogs and noncompliance with asthma medications (R. 733).

---

[4] https://www.mayoclinic.org/tests-procedures/spirometry/about/pac-20385201.

On November 14, 2013, Ms. Carter followed up with Dr. Sundaram. Spirometry showed moderately severe obstruction, which was a little better than at the last visit, but not statistically changed (R. 769). On December 19, 2013, spirometry continued to show moderately severe obstruction, and Ms. Carter reported needing her rescue inhaler "quite a bit" (R. 766). Dr. Sundaram noted that his office was going through the insurance authorization process to restart Ms. Carter on Xolair because her symptoms were much better controlled before she stopped taking it (*Id.*). He prescribed a high dose of Advair twice daily, Singulair daily, and ProAir, and he recommended that Ms. Carter avoid exposure to animals (R. 767). On January 23, 2014, Ms. Carter's spirometry was a little worse (R. 764). Dr. Sundaram noted Ms. Carter had not been taking Singulair consistently, and she had not yet restarted Xolair (*Id.*). His office was communicating with the infusion center at St. James hospital to get Xolair started, and he stated that Ms. Carter needed to take Singulair more consistently (*Id.*).

On March 15, 2014, Ms. Carter had a consultative examination with Albert Osei, M.D., for the Department of Disability Services ("DDS") (R. 789). Ms. Carter reported she was in her second year of college and working 30 to 40 hours per week at a nursing home (R. 790). She had restarted Xolair injections the previous week, and she could vacuum, cook a full meal, drive, walk up to two blocks, stand continuously and sit without limitation (*Id.*). The following month, state agency physician Reynaldo Gotanco, M.D., opined Ms. Carter could lift and carry 25 pounds frequently and 50 pounds occasionally (because heavier lifting caused shortness of breath), stand/walk/sit six hours in an eight-hour workday, and occasionally climb ramps, stairs, ladders, ropes or scaffolds because her asthma caused shortness of breath when climbing (R. 796-97). In addition, Ms. Carter should avoid concentrated exposure to irritants such as extreme heat/cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation (R. 799).

On March 25, 2014, Ms. Carter was admitted to the hospital for two days with acute asthma exacerbation and an upper respiratory infection (R. 884). She reported being compliant with her asthma medication, but she developed significant wheezing and shortness of breath after developing cold symptoms (R. 885). On April 24, 2014, Dr. Sundaram noted that Ms. Carter was getting Xolair shots, was compliant with Advair and had gotten rid of her hamster, but she sometimes forgot to take Singulair (R. 803). Ms. Carter reported "breathing fine," and her spirometry had improved to "moderate obstruction" (R. 804). Her mother reported Ms. Carter had been smoking marijuana, and Dr. Sundaram warned that is "very bad for her" because it has tar in it like unfiltered cigarettes (R. 803). Ms. Carter was to continue to take high doses of Advair, Singulair, ProAir, Xolair, and to avoid animals (R. 804-05). On May 1, 2014, Ms. Carter reported to Dr. Gordon that she felt "fine" and denied any recent asthma exacerbations (R. 1148).

On May 27, 2014, Ms. Carter and her mother testified at a hearing before a disability officer (R. 187). On July 16, 2014, the hearing officer issued a written opinion concluding Ms. Carter was not disabled, and she had the residual functional capacity ("RFC") to perform medium work with the limitations specified in Dr. Gotanco's state agency opinion (R. 186-95).

On August 6, 2014, Dr. Sundaram found "really no improvement in [Ms. Carter's] breathing" (R. 831-32). She had "good days and bad days" and generally was limited in her ability to really exert herself, and she continued to have intermitted exposure to animals (*Id.*). On October 12, 2014, Ms. Carter was admitted to the ER for acute asthma exacerbation, including cough, wheezing, and chest tightness (R. 954). Ms. Carter admitted she had been exposed to dogs and secondhand smoke, and had occasionally smoked marijuana and failed to regularly take her medications (R. 962). The change in weather also triggered her asthma (*Id.*). Ms. Carter was discharged two days later (R. 963). On October 21, 2014, Ms. Carter had a pulmonary function

test done which showed only moderate obstruction, but she was on Prednisone at the time (R. 829-30).

On January 14, 2015, Dr. Sundaram noted that Ms. Carter's spirometry was "consistent with moderate obstruction and significant[ly] improved from her last spirometry" (when she was not on Prednisone) (R. 827). He noted that Ms. Carter was compliant with her Xolair injections and daily doses of Advair and Singulair, and had "[i]mproved compliance with regard to smoking and decreasing exposure to animals" (*Id.*). On April 8, 2015, Ms. Carter returned to the ER with acute shortness of breath, chest tightness and cough (R. 1011). She was treated for an asthma attack and discharged the next day (R. 1017).

On September 2, 2015, Dr. Sundaram noted Ms. Carter had two no-shows since her last visit in January, which meant she missed a few weeks of Xolair, and Dr. Sundaram's office had over an hour of paperwork and phone calls to get her Xolair preapproved by insurance (R. 823-24). Nevertheless, Ms. Carter reported that she had been faithfully taking her inhaled mediations and felt "pretty well," although she was having a little bit of breathing difficulty with the change in weather (R. 823). Ms. Carter denied marijuana use, but asked if there was a basis for her to use medical marijuana; Dr. Sundaram reiterated that she should not smoke anything (R. 823, 825). Her spirometry was consistent with a moderate obstruction (R. 824).

## II.

On October 16, 2015, Ms. Carter appeared at her hearing before the ALJ without an attorney (R. 80). The ALJ advised her of her right to have an attorney and postponed the hearing to give Ms. Carter additional time to seek representation (*Id.*).

On December 4, 2015, the hearing resumed, although Ms. Carter was still not represented by an attorney (R. 32). Ms. Carter described working at a nursing home as an activity aide from

January 2014 through May 2015; she was on her feet most of the day but did not lift anything heavy due to her asthma (R. 41-43). That job ended after she had an asthma attack at work (R. 44). Ms. Carter's mother, Angela Moten, testified that Ms. Carter cooked, did laundry, and cleaned the house a little, but not the bathroom because the chemicals trigger her asthma (R. 60). Ms. Carter also grocery shopped, but lifting heavy groceries caused her "a little breathing" trouble and tiredness (R. 57).

The vocational expert ("VE") testified that an activity assistant at a nursing home is normally classified as medium work, but Ms. Carter performed it at the light level (R. 67). The ALJ gave the VE a hypothetical involving an individual who could perform medium work with some environmental and exertional limitations, and the VE testified to a significant number of jobs available in the national economy (R. 67-68).

### III.

On February 29, 2016, the ALJ issued a written decision concluding that Ms. Carter's disability ended on January 31, 2013, one year after she attained the age of 18, and she had not become disabled again since that date (R. 13). The ALJ found that since January 31, 2013, Ms. Carter had the severe impairments of allergic rhinitis and asthma, but they did not meet or medically equal the severity of Listing 3.03, which requires the claimant to establish she had FEV1 listing levels, or that she experienced asthma attacks requiring physician intervention at least once every two months or six times a year despite prescribed treatment (R. 15). The ALJ found that Ms. Carter's FEV1 level did not meet listing level during any of her pulmonary function tests since she turned eighteen, and although she "had some asthma-related hospitalizations and emergency room visits, the frequency and severity of her attacks did not meet the listing requirements for disability" (*Id.*).

7

The ALJ determined that since January 31, 2013, Ms. Carter had the RFC to perform medium work, except she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and she should avoid concentrated exposure to extreme cold and heat, wetness, humidity, and pulmonary irritants (including smoke, animal dander, and chemicals) (R. 16). This RFC was consistent with the state agency RFC opinion from April 24, 2014, which the ALJ "afforded significant weight" because it was "consistent with the overall record and [wa]s not contradicted by the opinions of treating or examining sources" (R. 20).

The ALJ found Ms. Carter's statements concerning the intensity, persistence and limiting effects of her symptoms "not entirely credible" (R. 17). The ALJ reviewed treatment records from Dr. Akhter and Dr. Gordon in 2012, which showed that her asthma was well-controlled (R. 18-19). In addition, the ALJ noted Ms. Carter described her shortness of breath as "nothing major" on her disability intake form for Prairie State College (R. 18).

The ALJ also reviewed records of Ms. Carter's visits to the ER for asthma exacerbation from 2013 through 2015. The ALJ determined they "were precipitated by non-compliance with medications and/or exposure to triggers that she could have avoided (e.g., marijuana, dog epithelium and dander)" (R. 20-21). For example, Ms. Carter was around marijuana when her asthma attack occurred precipitating her July 2013 ER visit (R. 17). And, on October 12, 2014, Ms. Carter had admitted being around second-hand smoke and dogs and "occasionally smoking marijuana, not taking her medications regularly, and exposure to sick contacts" (R. 18). Ms. Carter had also smoked marijuana and been exposed to dogs near the time she went to the ER on April 8, 2015 (R. 19).[5] Outside Ms. Carter's ER visits and hospitalizations, the ALJ found that her "lung

---

[5]The ALJ also wrote that she found it "notable" that Ms. Carter had experienced cold symptoms before going to the ER on March 25, 2014 (R. 17), but the ALJ does not explain why that fact is notable.

functioning was generally within normal limits during physical examinations," and "diagnostic test results (i.e., pulmonary function tests) consistently indicated that the claimant has a 'moderate' obstruction" (R. 21).

The ALJ also reviewed Dr. Sundaram's records and determined they further demonstrated Ms. Carter's non-compliance. On April 24, 2014, for example, Ms. Carter admitted she was not faithfully taking Singulair and that she had smoked marijuana, despite Dr. Sundaram's warnings (R. 19). In addition, on September 2, 2015, Dr. Sundaram reported that Ms. Carter had two no-calls/no-shows and had not been seen by the office since January 2015, which resulted in a delay in her getting needed Xolair injections (*Id.*).

Furthermore, the ALJ noted Ms. Carter could perform "a wide range of activities of daily living," including attending college (with accommodation) and working full-time as an activities assistant (albeit with two emergency room visits during that time period) (R. 21). Ms. Carter also helped clean the house (R. 16).[6] The ALJ concluded that the evidence showed that "while it is expected that the claimant will have some limitations in her activities due to shortness of breath, her breathing difficulties are relatively well-controlled" (R. 20). Ultimately, the ALJ found Ms. Carter could perform her past relevant work as an activity assistant, which she performed at the level of significant gainful activity from January 2014 until February 2015 (R. 21).

## IV.

After the ALJ's decision, Ms. Carter submitted the following additional records from Dr. Sundaram to the Appeals Council (R. 4):

---

[6]Although the ALJ stated she gave no weight to testimony from Ms. Carter's mother and a function report from her grandmother in assessing Ms. Carter's functional limitations, the ALJ found their reports "helpful." We note that, as the ALJ described them, Ms. Carter's mother's and grandmother's descriptions of Ms. Carter's functional activities were consistent with Ms. Carter's own reports of her activities of daily living (R. 17).

- On January 21, 2016, Dr. Sundaram noted Ms. Carter had some wheezing and her spirometry was worse than on her previous visits, likely because she missed her last Xolair injection (R. 1163-64).

- On March 22, 2016, Dr. Sundaram noted Ms. Carter's breathing was "a little worse" because she stopped taking Xolair due to billing issues (R. 1160-61). Her spirometry was consistent with a moderate obstructive pattern, better than her last spirometry (R. 1161).

- On April 28, 2016, Dr. Sundaram noted Ms. Carter's pulmonary function tests showed "a markedly-reduced FEV1" because she was not on Xolair (R. 1166).

- On June 23, 2016, Dr. Sundaram wrote a short letter reiterating that the April 28, 2016 pulmonary function test showed a "very severe obstruction" (R. 1167).

As noted above, on February 8, 2017, the Appeals Council denied Ms. Carter's request for review of the ALJ's decision (R. 1).

## V.

Ms. Carter, together with her mother, Ms. Moten, filed a motion in this Court seeking to reverse and remand the Commissioner's decision denying benefits (doc. # 21). Our review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). "We will uphold that decision if it is supported by substantial evidence in the record," *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017), which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). "An ALJ need not address every piece of evidence, but he must establish a logical connection between the evidence and his conclusion," *i.e.*, "build an accurate and logical bridge" between the evidence and his conclusion. *Lanigan*, 865 F.3d at 563.

### A.

As an initial matter, we reject the Commissioner's argument that "any of plaintiff's potential arguments have been waived given the threadbare nature of plaintiff's brief," which

consists of "no more than a smattering of broad factual allegations without citation to the record and with no argument or legal support" (doc. # 29: Gov.'s Resp. at 2-3). As the Commissioner recognizes, Ms. Carter continues to represent herself in this matter, without the benefit of an attorney.[7] We are "obligated to liberally construe a *pro se* plaintiff's pleadings," and "will address any cogent arguments we are able to discern" in Ms. Carter's briefs. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017) (citing *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001)).

Applying this standard, we discern that Ms. Carter makes the following assertions of error: (1) the ALJ failed to adequately evaluate her medical records, which Ms. Carter claims shows that her asthma was not controlled and that there has been no change in her lung function since 2008 (Pl.'s Mot. at 1-2); (2) the ALJ and the Appeals Council were missing relevant medical records (*Id.* at 2-3); (3) the ALJ should have contacted Ms. Carter's doctors because the ALJ did not have a clear understanding of the severity of her impairment (*Id.* at 3); and (4) asthma attacks prevented Ms. Carter from working and going to school, despite her genuine efforts to do so (doc. # 30: Pl.'s Reply at 1-3). For the reasons discussed below, we disagree with Ms. Carter, and find that the ALJ's decision denying benefits was supported by substantial evidence.

**B.**

Some of Ms. Carter's contentions essentially claim that the ALJ failed to fulfill her "duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). "This duty is enhanced when a claimant appears without counsel; then the ALJ must scrupulously and

---

[7]Ms. Carter does not argue that the ALJ failed to obtain a valid waiver of representation, but we note that at the initial hearing on October 16, 2015 the ALJ made the required disclosures to Ms. Carter (R. 76-81), including: "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* (internal citations and quotations omitted). "Although *pro se* litigants must furnish some medical evidence to support their claim, *see Johnson v. Barnhart*, 449 F.3d 804, 808 (7th Cir. 2006), the ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Pickett v. Berryhill*, No. 16-9241, 2018 WL 1384299, at *4 (N.D. Ill. Mar. 19, 2018) (citing 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3)).

However, "there is no absolute requirement that an ALJ update the medical records to the time of the hearing," and a "significant" -- or "prejudicial" -- omission "is usually required before this court will find that the Commissioner failed to assist *pro se* claimants in developing the record fully and fairly." *Nelms*, 553 F.3d at 1098-99. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Pickett*, 2018 WL 1384299, at *4 (quoting *Binio v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)). "Instead a claimant must set forth specific, relevant facts -- such as medical evidence -- that the ALJ did not consider." *Pickett*, 2018 WL 1384299, at *4 (citing *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997)).

Ms. Carter attached copies of medical records to her briefs in support of her arguments. Most of these documents were already part of the administrative record before the ALJ or submitted to the Appeals Council (*see* Gov.'s Resp. at 3-4). Of the remaining documents, four were created after the ALJ issued her decision and before the Appeals Council denied review of the ALJ's decision on February 8, 2017, but Ms. Carter did not submit these documents to the Appeals Council for review. To the extent Ms. Carter contends that the Commissioner was

responsible for the Appeals Council not having these documents – and that these documents may have changed the Appeals Council's decision not to review the ALJ's decision – we disagree.

Under 20 C.F.R. § 404.970, additional evidence submitted to the Appeals Council will be evaluated only if it is "new and material" and "relates to the period on or before the date of the [ALJ] hearing decision." *Stepp v. Colvin*, 795 F.3d 711, 721 (7th Cir. 2015). "[E]vidence is considered new if it was not in existence or available to the claimant at the time of the administrative proceeding, and it is considered material if there is a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered in the first instance." *Id.* at 721 n.2 (internal citations and quotations omitted).

Giving Ms. Carter the benefit of the doubt that the documents she attaches were "new evidence" (*i.e.*, not previously in existence or available to her), they would not be material under the regulations. The Appeals Council determined that the additional evidence Ms. Carter did submit – Dr. Sundaram's January through April 2016 treatment notes – "d[id] not provide a basis for changing the Administrative Law Judge's decision" (R. 2, 4). That boilerplate language (without more) indicates the Appeals Council did not accept Ms. Carter's submission as new and material evidence. *Stepp*, 795 F.3d at 713, 725.

There is not a reasonable probability that the four documents Ms. Carter attached to her brief but did not submit to the Appeals Council would have changed the ALJ's conclusion or the Appeals Council's decision not to review the ALJ's conclusion. The four documents consist of a pulmonology study from April 27, 2016 showing moderate obstruction and three treatment records from Dr. Sundaram: (1) a June 23, 2016 record indicating Ms. Carter's breathing and spirometry got better when she restarted Xolair but the spirometry was still "quite abnormal"; (2) a September 6, 2016 record noting Ms. Carter's spirometry showed "significant improvement" with "only mild

obstruction," and she had "marked improvement" in FEV1 with Xolair and that even without Xolair, she managed "good control" of her asthma using her other medications; and (3) a December 7, 2016 record stating that Ms. Carter was "currently more well controlled" and spirometry was still "improved to mild obstruction."

The April and June 2016 documents are essentially duplicative of the material submitted to the Appeals Council; however, the remaining evidence demonstrates that Ms. Carter's asthma improved significantly, to only mild obstruction, and she was able to maintain good control over her impairment. Thus, the "evidence bolsters the ALJ's conclusion and leads us to believe that the Commissioner would maintain her determination that [the claimant] was not disabled." *McFadden v. Berryhill*, 721 F. App'x 501, 506 (7th Cir. 2018).[8]

## C.

Ms. Carter also contends that the ALJ failed to adequately evaluate her medical records and should have contacted her doctors to better understand the severity of her impairments (Pl.'s Mot. at 1-2). We disagree.

"[T]he record includes ample evidence supporting the ALJ's decision." *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). The ALJ reviewed treatment records from Dr. Akhter and Dr. Gordon in 2012, which showed that her asthma was well-controlled (R. 18-19). The ALJ noted that Ms. Carter visited the ER several times from 2013 through 2015 due to flare-ups in her asthma, but determined those visits were triggered by Ms. Carter's non-compliance with medications, exposure to dogs or animals that she could have avoided, or marijuana smoking (R. 20-21). Outside of Ms. Carter's hospital visits, the ALJ pointed to evidence that her lung

---

[8]Ms. Carter also submitted to this Court evidence that post-dated the Appeals Council decision. Although not relevant to the Commissioner's decision in this case, we note that this evidence further records continued improvement and better control over Ms. Carter's asthma.

functioning was generally within normal limits and diagnostic test results showed moderate obstruction (R. 21). The ALJ's review of Dr. Sundaram's records supported her conclusions, and the ALJ further noted that Ms. Carter missed appointments with Dr. Sundaram, which caused her to miss needed Xolair injections (R. 19).

The ALJ determined that Ms. Carter's asthma was exacerbated when she ignored the advice of her physicians by continuing to smoke marijuana and spend time near dogs. In addition, the ALJ found that Ms. Carter's asthma worsened when she failed to take her medications. "The ALJ may deem an individual's statements less credible if medical reports or records show that the individual is not following the treatment as prescribed. However, such evidence should not negatively affect an individual's credibility if there are good reasons for the failure to complete the plan." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (internal citations omitted). "The claimant's 'good reasons' may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). In this case, Ms. Carter did not have good reasons for failing to comply with her medications. Not only did she occasionally forget to take prescribed Singulair, the ALJ pointed out Ms. Carter missed needed doses of Xolair because she missed two scheduled appointments with Dr. Sundaram. The ALJ did not err in drawing a negative inference after considering the reasons Ms. Carter was not compliant. *See also Putnam v. Colvin*, 651 F. App'x 538, 542 (7th Cir. 2016) (holding that the ALJ correctly observed that the claimant "sought sporadic treatment at best, and when he sought it, it stabilized any mood swings," thus implying the claimant was not disabled).

Based on this evidence, the ALJ concluded that Ms. Carter was not disabled. We find the ALJ's decision was supported by substantial evidence, and we find no gaps in the medical evidence for which additional medical evidence or testimony was necessary.

### D.

Ms. Carter also disputes the ALJ's determination that she was able to work and go to school despite her asthma. The ALJ found that Ms. Carter could perform "a wide range of activities of daily living," including working full-time as an activity assistant for more than a year and attending college (with accommodation) (R. 21). Ms. Carter points out that she continued to have occasional episodes of asthma exacerbation during this time, and she stopped working at the nursing home due to her asthma.

However, despite setbacks from her occasional asthma attacks, the ALJ had a sound basis in the record to conclude that Ms. Carter demonstrated her ability to work full-time, even with her impairment. It is unfortunate that severe asthma is an everyday fact of life for Ms. Carter. She may have to continue taking heavy doses of asthma medication and receiving injections of Xolair twice a month in order to maintain control over her impairment. And, we commend Ms. Carter for her recent efforts in maintaining good control over her asthma. However, we find no legal error in the ALJ's determination, which was supported by substantial evidence.

### CONCLUSION

For the foregoing reasons, we deny Ms. Carter's motion for remand (doc. # 21) and grant the Commissioner's motion to affirm (doc. # 28).

ENTER:

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED: July 24, 2018**